ment. The demurrer herein is overruled, with costs, with the usual leave to defendants to answer within 20 days after service of notice of judgment hereon.

Demurrer overruled, with costs, with usual leave to answer within 20 days after service of notice of judgment.

———

### FRANKLIN v. BOSTON & M. R. R.

(Supreme Court, Appellate Division, Third Department.   May 28, 1915.)

CONTEMPT ☞20—VIOLATION OF DECREE—CONSTRUCTION.

> Where a decree requires a railroad company to maintain a regular station at a certain point, at which all its regular trains must stop, the company will not be punished for contempt as for violating such decree, notwithstanding its regular trains were stopped only when necessary to take on or put off passengers who held tickets, or upon signal; that being all that was contemplated by the decree, in view of the showing as to the extent of traffic at the station.

> [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 58–62; Dec. Dig. ☞20.]

Kellogg and Howard, JJ., dissenting.

Motion by Morris Franklin against the Boston & Maine Railroad to punish it for contempt in failing to comply with a decree.   Motion denied.

The following is the opinion of Justice Henry T. Kellogg in the lower court:

This is a motion to punish the defendant for contempt in failing to comply with a provision of a decree of this court in an action between these parties which reads as follows: "That the said defendant, on or before the 1st day of May, 1912, erect and maintain a depot and platform of the value and at the point on the property of the plaintiff, as nearly as can be ascertained, as was erected and maintained by the Saratoga Lake Railroad Company, which will be for the accommodation of passengers to and from the spring property of the Eureka Spring Company, and which shall be maintained as a regular station of the defendant's railroad, at which all its regular trains stop."

The defendant has built and maintains a depot and platform at the point on the westerly property of the plaintiff described, and this depot, upon the proof before me, appears to be substantially as valuable and commodious for passengers as the depot formerly maintained. It is true that the depot was not erected within the precise time fixed by the decree, but sufficient excuse therefor has been shown. The defendant has stopped all of its regular trains at this depot since its erection upon signal, but not otherwise. It seems to me that a decree of the court which is in any wise ambiguous is subject to the same rules of interpretation as any other instrument, and that in interpreting a decree recourse may be had to the facts proven which gave rise to the decree.

This decree provides that the depot in question shall be "maintained as a regular station of the defendant's railroad at which all its regular trains shall stop." The contract between the predecessors in title of these parties, which is the basis of the decree in question, provides, in relation to the maintenance of the station, that the railroad "shall always keep and maintain a depot and platform for passengers," and made no express reference to the stopping of any trains. The proven facts of the case establish that the property, for the benefit of which the depot was to be erected, is upon the outskirts of the village of Saratoga Springs, and that there is scarcely a resident in its vicinity

———

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

whose convenience would be served by the stopping of trains. From May 1st to August last there were but four applications for tickets from Saratoga Springs to this station. The only travel to this station of a substantial character which ever will arise, if at all, will take place during the summer months only, and then only to carry passengers in the main from Saratoga Springs to the property of the plaintiff, for the purpose of enjoying the benefit of the white sulphur spring located there; but that such travel will ever become substantial is still unproven and problematical.

Under these circumstances it seems to me that it would be a gross injustice to compel this railroad daily to stop each and every of its numerous trains to and from Saratoga throughout the entire winter season, when there is no travel at all, and throughout the summer season when the travel is but light, and to compel it to stop such trains at all such·times, whether tickets are bought for the station, or the train is flagged, or otherwise. So far as all passengers from Saratoga to the Springs are concerned, the purchase of a ticket will insure the stoppage of the train; so far as passengers from the station are concerned, it is surely not a burden for them to show the signal provided to stop the desired train. The contract and the decree made for the benefit and the convenience of travelers, and not for the advertising of the plaintiff's springs by frequent stops, when there are no passengers to alight or to embark, at the expense of the comfort of the traveling public. Construed, therefore, in the light of the contract controlling the action of the parties, and the facts and circumstances of the case it seems to me to be very clear that it was intended by the decree in question by the provision in relation to the stopping of all regular trains to provide for such stopping when the same was necessary for the convenience of embarking and disembarking passengers whose wishes became known to those in charge of the trains by the tickets they held or the signal they displayed.

For these reasons, the motion is denied, with costs.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

William D. McNulty, of New York City, for appellant.
Jarvis P. O'Brien, of Troy, for respondent.

PER CURIAM. Order affirmed, without costs, on the opinion of Mr. Justice HENRY T. KELLOGG at Special Term. All concur, except KELLOGG and HOWARD, JJ., who dissent.

---

SOUTHEE v. BINGHAMTON RY. CO.

(Supreme Court, Appellate Division, Third Department. May 28, 1915.)

1. STREET RAILROADS ⊘⟿85—INJURIES—STREET RAILWAY RIGHTS.
     A street car has no paramount right in the street, even between blocks where the sides are filled with standing wagons, and a driver would have to stop or drive on the tracks.
     [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 193, 195; Dec. Dig. ⊘⟿85.]

2. STREET RAILROADS ⊘⟿118—INJURY TO PERSONS ON TRACKS—ACTIONS—INSTRUCTIONS.
     In an action for personal injuries received when his wagon was run down by a street car, an instruction that between blocks the street car had the right of way was properly refused, where there was evidence tending to show that the sides of the street were blocked, and that plain-

⊘⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    153 N.Y.S.—44